**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4816
_____

KRZYSZOF KOSZELNIK,

                                        Appellant

v.

SECRETARY OF DEPARTMENT OF HOMELAND
SECURITY; DIRECTOR OF UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES;
FIELD OFFICE DIRECTOR OF THE UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES AT
MOUNT LAUREL NEW JERSEY; DIRECTOR OF
NEWARK DISTRICT OFFICE OF UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 1-13-cv-06711)
District Judge:  Honorable Joseph E. Irenas

_____

Argued on February 11, 2016

Before:  FUENTES, KRAUSE and ROTH, <u>Circuit Judges</u>

(Opinion filed: July 8, 2016)

John K. Bleimaier, Esquire (**Argued**)
15 Witherspoon Street
Princeton, NJ 08542

Counsel for Appellant

Neelam Ihsanullah, Esquire (**Argued**)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

David V. Bober, Esquire
Office of United States Attorney
402 East State Street
Tenton, NJ 08608

Counsel for Appellees

O P I N I ON

**ROTH**, <u>Circuit Judge</u>:

Krzysztof Koszelnik[1] filed a petition in the U.S. District Court for the District of New Jersey, seeking review of the U.S. Citizenship and Immigration Services' denial of his naturalization application. The District Court held that Koszelnik was not entitled to naturalization and granted summary judgement in favor of the government. Koszelnik appealed. In this appeal, we are called upon to review the effect of the lapsing of the statute of limitations for rescission of permanent resident status upon the "lawful admission" requirement for naturalization.[2] Koszelnik was granted lawful permanent resident status on the basis of misinformation in his application; due to the lapsing of the statute of limitations, his resident status is no longer rescindable. The District Court denied Koszelnik's application for naturalization on the basis that he had failed to demonstrate that he was "lawfully admitted to the United States for permanent residence," as required by 8 U.S.C. § 1429. Koszelnik now argues that because he is currently a lawful permanent resident, at some point he must have been lawfully admitted to that status. We hold that he was not and therefore we will affirm the judgment of the District Court.

**I.**

In September 1984, during the Soviet crackdown on the pro-democracy Solidarity movement in Poland, Koszelnik traveled from Poland to the United States on a B-2 non-immigrant tourist visa. Koszelnik then applied for political asylum. In connection with this application, he was assigned

---

[1] The correct spelling of appellant's name is "Krzysztof," not "Krzyszof" as in the caption.

[2] 8 U.S.C. § 1429.

an "A-number."[3] Koszelnik's asylum application was denied and deportation proceedings were initiated against him. Koszelnik appeared before an Immigration Judge, who denied his application for relief from deportation, found him deportable and granted him voluntary departure. Because Koszelnik was unable to understand English, a translator was provided for him throughout these proceedings. Koszelnik does not dispute that he was informed at his hearing before the Immigration Judge that if he failed to voluntarily depart, he would be deported. Nevertheless, Koszelnik remained in the United States, and the voluntary departure order against him became a final deportation order by operation of law.

After residing in the United States for approximately ten years, Koszelnik applied for a diversity visa through the State Department's lottery program. Koszelnik failed to include his previously-assigned A-number on his application. Koszelnik also incorrectly answered "No" to the question, "Have you ever been deported from the U.S., or removed from the U.S. at government expense, excluded within the past year, or are you now in exclusion or deportation proceedings?" Unaware of the prior deportation proceedings, the INS issued Koszelnik a new A-number and, in 1995, granted him permanent resident status. It is undisputed that because of the prior order of deportation, the INS did not have jurisdiction over Koszelnik's application,[4] and that Koszelnik's application was approved erroneously because he was not actually eligible for permanent resident status.

---

[3] An "A-number" is an alien registration number, which the Department of Homeland Security assigns to foreign nationals applying for status in the United States.
[4] 8 C.F.R. § 242.1(a) (1995); *accord* 8 C.F.R. § 1245.2(a)(1).

Under the terms of 8 U.S.C. § 1256(a), despite the fact that Koszelnik was granted permanent resident status in error, the statute of limitations for re-examining that status adjustment lapsed after five years. Thus, it is also undisputed that as of 2000, Koszelnik's permanent resident status may no longer be rescinded on the basis of the misinformation provided in his application.

In 2012, Koszelnik filed an application for naturalization, once again failing to provide his original A-number and incorrectly answering "No" to the following questions:

- Have you ever given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?
- Have you ever been placed in removal, exclusion, rescission, or deportation proceedings?
- Have you ever been ordered removed, excluded, or deported from the United States?
- Have you ever applied for any kind of relief from removal, exclusion, or deportation?

Sometime thereafter, the government discovered its error in granting Koszelnik permanent residency and denied his naturalization application. The government concluded that Koszelnik's failure to disclose both his prior order of removal and his original A-number meant that he had failed to demonstrate that he was lawfully admitted for permanent residence as required by 8 U.S.C. § 1429 and that he was therefore ineligible for naturalization. Koszelnik pursued an administrative appeal of that decision, which was denied in

5

July 2013.  He then sought review in the U.S. District Court for the District of New Jersey.  The District Court granted summary judgment to the Government, holding that Koszelnik failed to meet his burden of showing that he was lawfully admitted and was therefore not eligible for naturalization.  Koszelnik appeals.

## II.[5]

To be eligible for naturalization in the United States, an applicant must demonstrate that he was "lawfully admitted to the United States for permanent residence."[6]  Placing the burden of proof on Koszelnik to demonstrate lawful admission comports with the deference traditionally shown to the government in this area of law.  In a line of cases dating back almost a century, the Supreme Court has consistently held that "[n]o alien has the slightest right to naturalization unless all statutory requirements are complied with."[7]

---

[5] The District Court had jurisdiction over this case pursuant to 8 U.S.C. § 1421(c).  We exercise jurisdiction over the present appeal pursuant to 28 U.S.C. § 1291.  We review the District Court's grant of summary judgment *de novo*, applying the same standard as the District Court.  *See Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002).  Summary judgment is appropriate when a moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

[6] 8 U.S.C. § 1429.

[7] *United States v. Ginsberg*, 243 U.S. 472, 475 (1917).  *See also Berenyi v. District Director, Immigration and Naturalization Service*, 385 U.S. 630, 637 (1967).

Because "the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship . . . . it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect."[8] Thus, "doubts [about eligibility for citizenship] should be resolved in favor of the United States and against the claimant."[9]

"The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws."[10] As other circuits have noted, "this definition is somewhat circuitous, and where there is ambiguity, we must give deference to the agency's interpretation, if it is reasonable."[11] We have adopted a similarly deferential standard, noting "we are especially aware that the INS's interpretations of the statutes it is charged with administering have typically been afforded a great deal of deference."[12] The Board of Immigration Appeals (BIA) has also explained that lawful admission "denotes compliance with substantive legal requirements, not mere procedural regularity."[13] According

---

[8] *Berenyi*, 385 U.S. at 637.

[9] *Id.* (internal quotations omitted).

[10] 8 U.S.C. § 1101(a)(20).

[11] *Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1186 (8th Cir. 2005) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)); *Injeti v. U.S. Citizenship and Immigration Services*, 737 F.3d 311, 315 (4th Cir. 2013).

[12] *Bamidele v. I.N.S.*, 99 F.3d 557, 561 (3d Cir. 1996).

[13] *In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (B.I.A. 2003)

to the BIA, an alien who has obtained lawful permanent resident status by fraud, or who was otherwise not entitled to it, has not been lawfully admitted.[14]  The BIA has applied this standard not only to fraud cases, but also to instances in which the alien obtained permanent resident status as a result of a negligent mistake by the Government.[15]  We endorsed the BIA's interpretation of "lawful admission" in *Gallimore v. Attorney General of the United States*, finding that even in cases not involving fraud, a grant of permanent resident status does not meet the standard of "lawful admission" if the applicant was not legally entitled to it for any reason.[16]  In so doing, we also adopted the BIA's position that lawful admission "denotes compliance with substantive legal requirements, not mere procedural regularity."[17]

We therefore first consider whether Koszelnik's initial grant of permanent resident status was "in substantive compliance with the immigration laws."[18]  We hold that it was not.  As an initial matter, INS lacked jurisdiction to adjudicate Koszelnik's adjustment application because once

---

(quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983)).

[14] *Id.* at 550-51.

[15] *Arellano-Garcia*, 429 F.3d at 1186-87.

[16] *Gallimore*, 619 F.3d 216, 224 (3d Cir. 2010) ("an alien whose status has been adjusted to lawful permanent resident but who is subsequently determined in an immigration proceeding to have originally been ineligible for that status has not been lawfully admitted for permanent residence.") (internal quotations omitted).

[17] *Id.* at 223 (internal quotation marks omitted).

[18] *Id.* n.6.

deportation proceedings are initiated against an alien, jurisdiction over an application for adjustment lies only with the Immigration Court, not with the INS.[19] Since Koszelnik had a final order of deportation pending against him, INS lacked jurisdiction, and therefore its approval of the application did not conform to substantive legal requirements.

Koszelnik's application for permanent residence also failed to conform to substantive legal requirements because it contained material misinformation, despite Koszelnik's certification under penalty of perjury that all the information on his application was correct.[20] A misrepresentation is material if it "tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded."[21] In the present case, Koszelnik failed to include his original assigned A-number and failed to disclose the order of deportation that was pending against him. It is undisputed that if the INS had been aware of the deportation order pending against Koszelnik, he would not have been granted lawful permanent resident status. Thus, it is clear that

---

[19] 8 C.F.R. § 242.1(a) (1995); *accord* 8 C.F.R. § 1245.2(a)(1).
[20] *Injeti*, 737 F.3d at 318 (because 8 C.F.R. § 103.2(a)(2) requires an applicant to certify that all information contained in the application "is true and correct," an applicant fails to comply with the relevant legal requirements for admission when material information is omitted on his application, "regardless of whether the misrepresentation on [his] application was willful.").
[21] *Matter of Kai Hing Hui*, 15 I. & N. Dec 288, 289 (B.I.A. 1975); *see also Mwongera v. I.N.S.*, 187 F.3d 323, 330 (3d Cir. 1999).

Koszelnik's initial admission into permanent residence did not conform to substantive legal requirements and was therefore not lawful for the purposes of naturalization.

## III.

We next consider Koszelnik's contention that the lapsing of the statute of limitations for rescinding his permanent resident status transformed his admission by operation of law from unlawful to lawful. In our previous analysis of the statute of limitations, we held that permanent resident status cannot be rescinded—and therefore that an alien granted permanent resident status cannot be deported—on the basis of misconduct in obtaining the status after the statute of limitations has lapsed.[22] This statute of limitations applies even where the alien would not have otherwise qualified for permanent resident status, but for the misinformation in the application.[23] Thus, we agree that Koszelnik's status as a lawful permanent resident—which was granted more than twenty years ago—cannot now be rescinded due to the misinformation in his application.

Koszelnik attempts to parlay this protection against rescission of permanent resident status into an argument in favor of citizenship, making the logical leap that because he is now a lawful permanent resident, it is "axiomatic" that at

---

[22] *Bamidele*, 99 F.3d at 563 ("[T]he running of the limitation period bars the rescission of [applicant's] permanent resident status and, in the absence of the commission of any other offense, thereby bars initiation of deportation proceedings in this case.").

[23] *Id.* at 563-64.

10

some point he must have been lawfully admitted to that status. According to Koszelnik, on the day that the statute of limitations lapsed for rescinding his status, he became "lawfully admitted" for naturalization purposes. This argument misconstrues the purpose and effect of the statute of limitations. The statute of limitations governs rescission of adjustment; it does not extend to the naturalization context. As we stated in *Bamidele*, the purpose of § 1256(a) is to ensure that noncitizens with permanent resident status are afforded the "security which ought to attend that status."[24] Here, Koszelnik is in no danger of losing his permanent resident status. Rather, without any real support for his position, Koszelnik asks this court to convert a statute meant to shield his lawful permanent resident status into a sword to compel the government to grant him citizenship. To do so would greatly expand a statute without any showing of the legislative intent to do so. Furthermore, while the statute of limitations does protect longtime residents from rescission and deportation, it does not undo or legalize their prior unlawful conduct.[25] In other words, the statute of limitations does not erase the material misrepresentations in Koszelnik's application for permanent residence; it merely bars the government from deporting him based on them.

## IV.

Koszelnik's final argument is rooted in equity. He argues that a lifetime ban on naturalization is a "harsh

---

[24] *Bamidele*, 99 F.3d at 564.

[25] *See Smith v. U.S.*, 133 S.Ct. 714, 720 (2013) ("[A]lthough the statute of limitations may inhibit prosecution, it does not render the underlying conduct noncriminal.").

penalty," unsupported by strict construction of the relevant statute. According to Koszelnik, it would be unfair to forever block him from naturalization based on the misinformation in his initial application for permanent residence, without a showing of express Congressional intent to do so. This argument fails for two reasons. First, the equity considerations in this case do not weigh in Koszelnik's favor. As stated by the District Court:

> [Koszelnik] should have been deported approximately 15 years ago. Instead, he remained in the United States and has since benefitted from the Government's (1) mistake in granting him permanent resident status and (2) failure to discover its mistake in time to remove [Koszlenik]. Thus, [Koszelnik] is now legally permitted to stay in the United States indefinitely. That [Koszelnik] cannot obtain citizenship hardly seems unfair under such circumstances.[26]

Furthermore, even if this Court did agree that barring Koszelnik from naturalization was a harsh penalty, we lack equity powers to override statutory requirements and grant Koszelnik citizenship.[27] "The power to make someone a citizen of the United States has not been conferred upon the federal courts . . . . [r]ather, it has been given them as a

---

[26] *Koszelnik v. Secretary of Dept. of Homeland Sec.*, 2014 WL 6471479 at *3 (D.N.J. Nov. 18, 2014).

[27] *I.N.S. v. Pangilinan*, 486 U.S. 875, 885 (1988) ("Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [Congressional] limitations.").

12

specific function to be performed in strict compliance with the terms of an authorizing statute."[28]  Here, there is a clear Congressional mandate that only applicants who demonstrate strict compliance with all of the statutory requirements for citizenship may be naturalized.[29]  Koszelnik failed to do so. "Once it has been determined that a person does not qualify for citizenship, the [] court has no discretion to ignore the defect and grant citizenship."[30]

## V.

For the foregoing reasons we will affirm the judgment of the District Court.[31]

---

[28] *Id.* at 884-85.

[29] *Federenko v. U.S.*, 449 U.S. 490, 506 (1981).

[30] *Pangilinan*, 486 U.S. at 884.

[31] Two panels of this Court are filing opinion in *Koszelnik v. Secretary*, No. 14-4816, and *Saliba v. Attorney General*, No. 15-3769, on this day dealing with similar issues.  Each opinion is a further precedent supporting the other opinion.