RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0001p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

KAMAL H. TURFAH,

             *Petitioner-Appellant,*

    *v.*

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

             *Respondents-Appellees.*

> No. 16-1282

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-10371—Marianne O. Battani, District Judge.

Argued: December 6, 2016

Decided and Filed: January 6, 2017

Before: BOGGS, GILMAN, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Nabih H. Ayad, NABIH H. AYAD & ASSOCIATES, P.L.L.C., Detroit, Michigan, for Appellant. Patricia Gaedeke, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellees. **ON BRIEF:** Nabih H. Ayad, NABIH H. AYAD & ASSOCIATES, P.L.L.C., Detroit, Michigan, for Appellant. Derri T. Thomas, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellees.

      GILMAN, J., delivered the opinion of the court in which BOGGS and DONALD, JJ., joined. BOGGS, J. (pp. 10–12), delivered a separate concurring opinion.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Kamal Turfah is a citizen of Lebanon.  He has been a lawful permanent resident (LPR) of the United States since he entered the country in September 1995.  In November 2012, Turfah applied to become a naturalized U.S. citizen.  United States Citizenship and Immigration Services (USCIS) denied Turfah's application, finding that (1) he was ineligible for naturalization, and (2) he lacked good moral character.  Only the former finding is before us on appeal because USCIS dismissed the latter.

Turfah filed a timely petition for de novo review of USCIS's decision in the United States District Court for the Eastern District of Michigan.  Both parties moved for summary judgment.  The district court granted summary judgment for USCIS, holding that Turfah was ineligible for naturalization.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Turfah entered the United States when he was 19 years old.  He traveled here on a visa that allowed him to enter the United States as an unmarried child under the age of 21 who was "accompanying or following to join" his father, the principal visa holder.  Turfah arrived in the United States on September 23, 1995.  Despite arriving on his own, rather than accompanying or following his father, the immigration authorities mistakenly admitted Turfah into the country.  Turfah's father arrived in the United States less than a month later, on October 17, 1995.  His father ultimately became a naturalized United States citizen.

When Turfah applied for naturalization in November 2012, USCIS denied his application.  USCIS determined that Turfah was "not lawfully admitted" for LPR status because he entered the country before his father was admitted, thus violating the requirement of his derivative visa that he had to be "accompanying or following" his father at the time of entry.  In addition, USCIS denied Turfah's application for lack of good moral character based on his failure to accurately report and pay federal income taxes in 2010, but later dismissed this ground

for denial. Whether Turfah was lawfully admitted for permanent residence is therefore the only issue before us on appeal.

## II. ANALYSIS

### A.     Standard of review

We review de novo the district court's decision to grant summary judgment. *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 559 (6th Cir. 2016). Summary judgment is appropriate when there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 559-60. When challenging the denial of naturalization, the applicant has the burden of establishing his eligibility. *Sakarapanee v. Dep't of Homeland Sec., U.S. Citizenship & Immigration Servs.*, 616 F.3d 595, 597 (6th Cir. 2010).

### B.     Under applicable law pertaining to the visas in question, an accompanying relative cannot precede the principal immigrant into the United States.

#### 1.     *The statute requires that applicants for naturalization be lawfully admitted for permanent residence.*

Under 8 U.S.C. § 1427(a), an applicant for naturalization must establish that, among other things, he has been "lawfully admitted for permanent residence" and has resided continuously in the United States for at least five years thereafter. The requirement that an applicant must be lawfully admitted for permanent residence in order to be naturalized is restated in 8 U.S.C. § 1429. This latter section also establishes that the applicant bears the burden of proving that his admission was lawful. *Id.*

"Lawfully admitted for permanent residence" is defined by the Immigration and Nationality Act (INA) as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). The INA does not otherwise define or elucidate this standard.

### 2. The interpretation of "lawfully admitted for permanent residence" by the Board of Immigration Appeals (BIA) and other circuits is correct.

Because the INA does not clearly explain what constitutes admission "in accordance with the immigration laws," the BIA and several other circuit courts have faced questions of interpretation regarding the lawful-admission requirement. These decisions support the proposition that an alien who has obtained LPR status is not necessarily an alien who has been lawfully admitted for permanent residence. *See, e.g.*, *Matter of Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983) (rejecting an alien's argument that he was lawfully admitted solely because he had been admitted as an LPR in "procedurally regular fashion," instead holding that "[a]dmission is not lawful if it is regular only in form").

The BIA interpreted the lawful-admission requirement in *In re Koloamatangi*, 23 I. & N. Dec. 548 (BIA 2003). In that case, the BIA held that an alien had not been lawfully admitted when he had procured his LPR status through marriage fraud. *Id.* at 549, 551. The BIA clarified that lawful admission requires "compliance with substantive legal requirements, not mere procedural regularity." *Id.* at 550 (quoting *Longstaff*, 716 F.2d at 1441). In other words, the fact that the alien in *Koloamatangi* had been granted LPR status did not necessarily mean that his admission was lawful, especially where that status had been granted in violation of the underlying substantive immigration laws. *Id.*

The BIA in *Koloamatangi* stated broadly that aliens were not lawfully admitted if they obtained their LPR status through "fraud, or had otherwise not been entitled to it." *Id.* at 550. Every circuit court to consider the lawful-admission requirement has deferred to the BIA's interpretation in *Koloamatangi*. *See Injeti v. U.S. Citizenship & Immigration Servs.*, 737 F.3d 311, 315-16 (4th Cir. 2013); *Gallimore v. U.S. Att'y Gen.*, 619 F.3d 216, 224-25 (3d Cir. 2010); *Estrada-Ramos v. Holder*, 611 F.3d 318, 321 (7th Cir. 2010); *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1216-17 (9th Cir. 2010); *Walker v. Holder*, 589 F.3d 12, 19-20 (1st Cir. 2009); *De La Rosa v. U.S. Dep't of Homeland Sec.*, 489 F.3d 551, 554-55 (2d Cir. 2007); *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1313 (11th Cir. 2006); *Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1186-87 (8th Cir. 2005).

These courts have held that *Koloamatangi*'s "had otherwise not been entitled to it" language means that an alien is not lawfully admitted if he gains LPR status due to a mistake by the government—even if the alien did not commit any fraud in obtaining that status. For example, several circuits have held that aliens were not lawfully admitted when immigration officials granted them LPR status despite the fact that the aliens were inadmissible due to criminal convictions. *See, e.g.*, *Estrada-Ramos*, 611 F.3d at 320-21 (holding that an alien was not lawfully admitted despite his LPR status due to his earlier having pleaded guilty to a cocaine offense, for which INS later found him statutorily removable); *Savoury*, 449 F.3d at 1310-11, 1313-14 (holding that an alien was not lawfully admitted when the INS had granted him LPR status without knowing that he had been convicted of possessing cocaine with the intent to distribute); *Arellano-Garcia*, 429 F.3d at 1184-87 (holding that an alien was not lawfully admitted when he was mistakenly granted LPR status after he had been deported due to an aggravated-felony conviction, then illegally reentered the country using a temporary permanent-resident card that immigration officials had forgotten to take from him upon his deportation).

We are persuaded by these decisions from our sister circuits. Accordingly, we adopt the BIA's interpretation of the lawful-admission requirement as consistent with 8 U.S.C. §§ 1427(a) and 1429. Those sections of the INA are ambiguous because they do not clearly explain the meaning of granting LPR status "in accordance with the immigration laws." *See Arellano-Garcia*, 429 F.3d at 1186 (describing the statutory definition as "somewhat circuitous" and holding that the court must therefore defer to the BIA's interpretation under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). As litigants in other cases have argued, the lawful-admission requirement could mean either (1) that an alien is "lawfully admitted" if the immigration authorities allow the alien to enter, without regard to whether the alien meets the substantive requirements for LPR status (as Turfah argues), or (2) that an alien is "lawfully admitted" only if the alien meets all of the substantive requirements for LPR status in the immigration laws (as other circuits and the BIA have held). *See, e.g.*, *Longstaff*, 716 F.2d at 1441.

Because the statute is ambiguous, we must defer to the BIA's interpretation of the statute in *Koloamatangi* so long as that interpretation is deemed reasonable. *See Chevron*, 467 U.S. at

842-43; *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (holding that the principles of *Chevron* deference generally apply to the BIA's interpretations of the INA and noting that deference to the executive branch is especially important in the immigration context). Turfah has not argued that the BIA's interpretation is unreasonable, aside from pointing out the unfairness of barring him from naturalization due to the simple fact that he entered the country 24 days too early. But Turfah's argument does not explain how interpreting the lawful-admission requirement to mean that an alien must be admitted in accordance with the underlying substantive immigration laws could be unreasonable. We therefore defer to the BIA's interpretation of the lawful-admission requirement in *Koloamatangi*.

### 3. Turfah was not lawfully admitted for permanent residence because his admission to the United States was in violation of 22 C.F.R. § 40.1(a)(2).

USCIS's core argument is that Turfah's admission to the United States was not lawful, despite the government mistakenly admitting Turfah as an LPR, because Turfah violated 22 C.F.R. § 40.1(a)(2) when he entered the country before his father. Turfah received a visa as a child "accompanying or following to join" his parent under 8 U.S.C. § 1153(d). "[A]ccompanying" is defined by 22 C.F.R. § 40.1(a)(2). This section provides that "[a]n 'accompanying' relative may not precede the principal alien to the United States." USCIS contends that by entering the United States before his father, Turfah violated this regulation and thus was not entitled to the LPR status that he was granted.

Although the parties do not frame their arguments in terms of whether deference to 22 C.F.R. § 40.1(a)(2) is warranted, the outcome of this case hinges on whether we are bound by that regulation's interpretation of the statutory term "accompanying." Turfah essentially argues that USCIS's application of the regulation is unreasonable because it leads to the "absurd" result of barring him from naturalization due to a minor procedural violation—entering the United States 24 days too early. Whether absurd or not, however, 8 U.S.C. § 1153(d) unambiguously provides visas only for spouses and children who are "accompanying or following to join" the principal immigrant. Turfah essentially asks us to conclude that "accompanying" means something more than being in the physical presence of the principal immigrant. His argument, however, is contrary to the ordinary meaning of the word "accompanying," which is defined as

"go[ing] with (a person) as a companion, escort, or attendant." *Accompany*, Oxford English Dictionary (3d ed. 2011). Courts should interpret words in a statute according to their ordinary meaning unless those words are otherwise defined by the statute. *Deutsche Bank Nat'l Tr. Co. v. Tucker*, 621 F.3d 460, 462-63 (6th Cir. 2010).

Turfah's interpretation would also violate the well-established rule that courts should not construe a statute in a manner that would render any of its provisions superfluous. *See Ford Motor Co. v. United States*, 768 F.3d 580, 587 (6th Cir. 2014). If "accompanying" had a meaning broad enough to include children entering the United States either before or after their parents, the words "following to join" would be unnecessary. The natural reading of 8 U.S.C. § 1153(d) leads to the conclusion that a child with an accompanying-relative visa may immigrate either in the physical presence of his parent or after his parent has entered, but not before his parent.

In other words, the language of 8 U.S.C. § 1153(d) suggests that Congress knew that the word "accompanying" included only children entering the United States alongside their parents, and that Congress added the phrase "following to join" to guarantee that children entering the country after their parents would also be allowed to immigrate. The fact that Congress added the phrase "following to join" suggests that Congress knew how to expand the meaning of "accompanying." If Congress had wanted to include children who immigrated before their parents, it presumably would have done so. Finally, our research shows that the only circuit court to have interpreted the word "accompanying" in 8 U.S.C. § 1153(d) also concluded that the term does not encompass children who enter the United States before their parents. *Santiago v. INS*, 526 F.2d 488, 490-91 (9th Cir. 1975).

We therefore conclude that the requirement in 22 C.F.R. § 40.1(a)(2) that "[a]n 'accompanying' relative may not precede the principal alien" simply makes more explicit what the plain language of 8 U.S.C. § 1153(d) already indicates. Because the regulation is fully consistent with the statute that it interprets, we must apply the regulation as written. *See Chevron*, 467 U.S. at 842-43. Turfah indisputably violated the regulation by entering the United States before his father. This means that Turfah was not lawfully admitted as an LPR despite the

fact that his father met the lawful-admission requirement. Turfah is thus currently ineligible for naturalization.

We acknowledge that, as Turfah argues, all of the cases that USCIS cites for its arguments are factually more extreme. Each of the cases on the lawful-admission requirement, for example, involves criminal activity, fraud, or misrepresentation on the part of the alien. And *Matter of Khan*, 14 I. & N. Dec. 122, 123 (BIA 1972), which USCIS cites for the proposition that "[a]n accompanying relative may not precede the principal alien to the United States," involved a child whose father died before arriving here. Unlike the aliens in those cases, Turfah is being barred from naturalization solely because he arrived in the United States 24 days before his father. These factual distinctions, however, are not legally material because Turfah clearly failed to meet a statutory requirement for naturalization.

And if we were to ignore the plain meaning of "accompanying" by holding that a minor preceding his parent by 24 days was "close enough," where would we draw the line? Would 24 weeks be okay, or 24 months? We decline to start down this slippery slope, instead holding that the word "accompanying" means what it says in plain English.

We also note that the "accompanying" requirement in 8 U.S.C. § 1153(d) is not necessarily "absurd." One can easily imagine the chaos that would result from allowing a minor child to immigrate months, or even days, before his or her parents. Turfah was 19 when he arrived in the United States and presumably able to take care of himself, but a 5-year-old in Turfah's circumstances could not have done so. Because a common-sense explanation exists for the "accompanying" requirement, we decline to find that its plain language leads to results that were "clearly unintended by Congress." *See In re Vause*, 886 F.2d 794, 799 n.6 (6th Cir. 1989) (explaining the doctrine of absurdity).

Finally, we are unpersuaded by Turfah's argument that he must be considered lawfully admitted because his LPR status "vested" when the five-year statute of limitations ran, preventing the government from rescinding the same. *See* 8 U.S.C. § 1256(a). But, the language of 8 U.S.C. § 1256(a) applies to the recission of LPR status, not to naturalization proceedings. Furthermore, the running of the statute of limitations simply means that the government cannot

institute recission proceedings against Turfah, not that Turfah's entry was lawful in the first place. *See Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 181 (3d Cir. 2016) (rejecting an alien's argument that he was lawfully admitted because the statute of limitations for rescinding his LPR status had run).

**C.     This court cannot award Turfah naturalization based on estoppel or other equitable relief.**

As a final matter, USCIS correctly notes that this court cannot invoke its equitable powers to circumvent the requirements of the immigration laws. *See INS v. Pangilinan*, 486 U.S. 875, 883-84 (1988). The Supreme Court has clearly held that 8 U.S.C. § 1421(d) provides that a person may not be naturalized by any means other than those specified in the INA, thus depriving the federal courts of the power to confer citizenship by equitable means. *Id.* Moreover, the Supreme Court has held that the government cannot be estopped from denying naturalization unless the government has committed "affirmative misconduct" during the alien's application process. *INS v. Hibi*, 414 U.S. 5, 8 (1973). Turfah has made no showing of affirmative misconduct either by USCIS in denying his application for naturalization or by the immigration officials who mistakenly granted him LPR status. These officials were presumably negligent in admitting Turfah when he immigrated too soon, but that does not give rise to an estoppel claim. *See id.* The INA and applicable caselaw therefore foreclose Turfah's suggestion that we should reverse the district court based on principles of equity.

Turfah's circumstances are certainly sympathetic. As Turfah puts it, he is being denied naturalization "based on a technicality." This result could be considered unfair, but we are constrained to follow 22 C.F.R. § 40.1(a)(2) and affirm the district court's ruling that Turfah is currently ineligible to naturalize because he was not lawfully admitted for permanent residence. Although we are unable to require the government to grant Turfah's application, we note that the facts of this case are exceptional. We therefore encourage the government to use any discretion that it might have to overcome the current impasse on Turfah's road to naturalization.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

**CONCURRENCE**

---

BOGGS, Circuit Judge, concurring. I concur with my colleagues that we are constrained to follow 8 U.S.C. § 1153(d) and 22 C.F.R. § 40.1(a)(2), and thus to affirm the judgment of the district court. I write separately, however, to amplify the district court's statement that "Turfah must . . . petition USCIS for an adjustment of status" in order to become eligible for naturalization. Dist. Ct. Op. 9.

First, it is unclear whether the government believes that (1) because Turfah was not "lawfully admitted" for permanent residency, he was never technically granted LPR status in the first place (even though the government admits that the five-year period in which the government could have rescinded Turfah's LPR status has expired), or (2) as the majority opinion presumes, Turfah has acquired LPR status (irrevocably so following the expiration of the five-year period) and so is a "lawful permanent resident," albeit not one who was "lawfully admitted" for permanent residency.

The government has made inconsistent statements about Turfah's status. In its decision reaffirming the denial of Turfah's application for naturalization, USCIS writes, "your status is not that of an immigrant, but a nonimmigrant," implying that Turfah does not even have LPR status, "and you are ineligible for naturalization without being legally admitted for permanent resident status." Dec. 29, 2014, Decision Letter from USCIS Field Office Dir. to Pet'r, at 1. Before the district court, however, the government argued that "although [Turfah] may not become a naturalized citizen at this time because he was not lawfully admitted for permanent residence, he is still an LPR." Def.'s Mot. Summ. J. 11. While it is clear that the five-year period in which the government could move to rescind Turfah's LPR status has expired, it is not clear—based on the USCIS denial of Turfah's application for naturalization—that USCIS currently views Turfah as holding LPR status.

Compounding this confusion, the district court made some statements that are consistent with the government's first position but other statements consistent with the second. For

example, the district court cites authority stating that an "alien whose status has been adjusted to lawful permanent resident but who is subsequently determined in an immigration proceeding to have originally been ineligible for that status . . . is deemed, *ab initio, never to have obtained* lawful permanent resident status." Dist. Ct. Op. 4 (emphasis added) (quoting *De La Rosa v. U.S. Dep't of Homeland Sec.*, 489 F.3d 551, 554 (2d Cir. 2007)). And the district court states that "[Turfah] must therefore petition [USCIS] for an adjustment of status *granting him* LPR status, and the government may decide whether it is appropriate to issue this status *nunc pro tunc*, or retroactively." *Id.* at 9 (emphasis added). Both of these statements in the district court's opinion support the proposition that Turfah does not currently have LPR status *at all*, in addition to not being "lawfully admitted" as naturalization would require.

At the same time, however, the district court describes Turfah's case with language such as: "any person who has been erroneously *granted* LPR status, for whatever reason, has not been lawfully *admitted* for permanent residence." *Id.* at 6 (emphases added). This statement is consistent with the lead opinion's assumption (and with the government's arguments before the district court and on appeal) that Turfah, though not lawfully *admitted*, *has* LPR status that has been wrongly but now irrevocably granted.

The district court counsels Turfah to petition USCIS for an adjustment of status—something that the requisite immigration form (Form I-485, "Application to Register Permanent Residence or Adjust Status") styles "an adjustment *to permanent resident status*" (emphasis added). There is no explicit mechanism for an immigrant who already *has* LPR status to petition for an adjustment so as to be deemed "lawfully admitted." Perhaps ironically, then, Turfah might have a path to naturalization only if he can persuade USCIS both to *allow him to file* a Form I-485 (which would possibly require at least a momentary determination that Turfah does *not* presently have LPR status) and to *grant* the adjustment so that Turfah would then be deemed "lawfully admitted," whether retroactively or as of the date of the adjustment.

Regardless of whether USCIS does or does not currently view Turfah as a lawful permanent resident, I would call to the attention of USCIS that the government has conceded "error" in admitting Turfah before Turfah's father, rather than turning Turfah away when he

presented himself for entry and directing Turfah to return when he was "accompanying or following" his father.  Def.'s Mot. Summ. J. 10.

In past cases that have been "sufficiently 'exceptional' to merit consideration for discretionary relief," but in which we have been unable to grant such relief, we have not only expressed sympathy with the litigant's circumstances but also called those circumstances to the attention of the government agency that has the authority to grant relief.  *See Mason v. Mukasey*, 306 F. App'x 897, 900, 902 (6th Cir. 2009) (calling attention to the litigants' counsel and to the Department of Homeland Security the fact that the petitioner—a Liberian citizen who had fled extreme persecution at the hands of Charles Taylor's army in Liberia and who had applied for but been denied asylum and other relief in the United States—had lost her opportunity to appeal "through no fault of her own" but rather through the failure of her attorney and the government to notify her of their dismissal of her appeal).  Because there appears to be no mechanism by which Turfah can meet the statutory requirement for naturalization other than by petitioning USCIS for an adjustment to be deemed "lawfully admitted," I would therefore encourage USCIS to use any discretion it has in processing a Form I-485, should Turfah choose to file one, not only to adjust Turfah to "permanent resident status," if that is necessary, but also to adjust Turfah's status to "lawfully admitted."