**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1439
_____

MAHNAZ HASER,

Appellant

v.

KRISTAL BROWN, USCIS; MICHAEL HORVATH, USCIS
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-18-cv-01383)
Magistrate Judge: Honorable Maureen P. Kelly
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 3, 2020

Before: KRAUSE, MATEY, and ROTH, Circuit Judges

(Opinion filed: February 4, 2021)
_____

OPINION*
_____

PER CURIAM

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Mahnaz Haser appeals from the District Court's judgment against her in this naturalization proceeding under 8 U.S.C. § 1421(c). We will affirm.

I.

In 2001, Haser received asylum in the United States on the basis of alleged persecution in Iran. She later adjusted her status to lawful permanent resident ("LPR") on the basis of that relief. During Haser's asylum proceeding, she claimed that she is an Iranian citizen and that Iranian officials detained and tortured her from 1994 until she fled to the United States in 2000. In fact, however, Haser was and is a citizen of Sweden and lived in Sweden from 1987 through 2000. She also traveled between Sweden and the United States on a Swedish passport five times in 1999. Haser did not disclose these facts, all of which she now concedes, in her applications or interviews.

Haser later filed a naturalization application with United States Citizenship and Immigration Services ("USCIS"). During the naturalization process, Haser finally disclosed certain facts regarding her Swedish background (while continuing to misrepresent others), and USCIS learned other such facts through other means. On the basis of that information, USCIS ultimately determined that Haser's asylum and resultant LPR status were based on false information and that she never qualified for asylum from Iran because her Swedish citizenship showed that she had "firmly resettled" in that country. See 8 U.S.C. § 1158(b)(2)(A)(vi). Thus, USCIS determined that Haser was ineligible for naturalization and denied her application.

2

Haser exhausted her administrative remedies and then filed with the District Court the complaint at issue here seeking review of the denial of her naturalization application. USCIS filed a motion to dismiss Haser's complaint or for summary judgment. The District Court, acting through a Magistrate Judge on the parties' consent, properly treated the motion as one for summary judgment and granted it. Haser appeals.

II.

The District Court had jurisdiction under 8 U.S.C. § 1421(c), and we have jurisdiction under 28 U.S.C. § 1291. See Koszelnik v. Sec'y DHS, 828 F.3d 175, 179 n.5 (3d Cir. 2016). Our review is de novo, see id., and we apply the principles summarized in Koszelnik, 828 F.3d at 179, and Saliba v. Attorney General, 828 F.3d 182, 189 (3d Cir. 2016). Having done so, we will affirm substantially for the reasons explained by the District Court.

In brief, Haser is eligible for naturalization only if she "has been lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1429. Although Haser received asylum and adjusted her status to LPR on that basis, she has not been "lawfully admitted to the United States for permanent residence" for this purpose because her grant of asylum and resultant adjustment of status were based on material misinformation as summarized above. See Koszelnik, 828 F.3d at 179-80 & n.20; see also Saliba, 828 F.3d at 192; Gallimore v. Att'y Gen., 619 F.3d 216, 223–24 & n.6 (3d Cir. 2010). Haser does not contest that her Swedish citizenship was material to her asylum application, which it

3

unquestionably was.[1]  The omission of this information from Haser's application means that she has not been "lawfully admitted to the United States for permanent residence" regardless of whether that omission resulted from fraud or willful misrepresentation.  See Koszelnik, 828 F.3d at 180 & n.20; Saliba, 828 F.3d at 192; Gallimore, 619 F.3d at 223–24 & n.6.

Haser raises essentially two arguments on appeal, but both lack merit.  First, she argues that USCIS should be equitably estopped from denying her naturalization application because the asylum officer who interviewed her in 2001 committed misconduct.  In particular, Haser asserts that the officer propositioned her for a romantic date and then "prevented her" from disclosing her Swedish background.

Accepting these assertions as true, and leaving aside the fact that they do not explain all of the instances in which Haser failed to disclose her Swedish background,[2]

---

[1] Information is material for this purpose "if it tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that [s]he be excluded."  Koszelnik, 828 F.3d at 180 (quotation marks omitted).  In this case, USCIS concluded that Haser's Swedish citizenship rendered her ineligible for asylum from Iran because it showed that she had "firmly resettled" in Sweden.  See 8 U.S.C. § 1158(b)(2)(A)(vi); 8 C.F.R. § 1208.15.  Haser does not contest that issue and, regardless of whether she actually had "firmly resettled" in Sweden, her Swedish citizenship was at the very least material to that issue under the definition quoted above.  Thus, we need not determine whether Haser actually had "firmly resettled" in Sweden.  See 8 C.F.R. § 1208.15(a) and (b) (establishing exceptions that, at first blush, do not appear to apply to Haser).

[2] Haser failed to disclose her ties to Sweden and her previous travels to the United States in her asylum application, her asylum statement, and her application to adjust status.  She also repeated her false claim about being imprisoned in Iran from 1994 through 2000

4

these assertions do not state a basis for relief. Courts generally cannot grant naturalization on the basis of equitable considerations or by estoppel. See Koszelnik, 828 F.3d at 182 & n.27 (citing, inter alia, INS v. Pangilinan, 486 U.S. 875, 885 (1988)). To the extent that such principles may be relevant in this context, Haser has not alleged the kind of detrimental reliance on a governmental representation that might state a basis for relief. See Duran-Pichardo v. Att'y Gen., 695 F.3d 282, 285 n.7 (3d Cir. 2012).

Second, Haser argues that, when she applied for asylum on the basis of persecution in Iran, she actually qualified for asylum on the basis of persecution in Sweden because she was the victim of domestic violence in that country. Haser further argues that USCIS and the District Court erred by failing to decide that issue. That issue, however, is beyond the scope of this naturalization proceeding.

In order to naturalize, Haser bears the burden of showing that she "has been lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1429 (emphasis added). And in order for Haser's allegations regarding her mistreatment in Sweden to assist her in that purpose, she would have to show that she (1) applied for and properly received asylum on that basis, and then (2) applied for and properly received an adjustment to LPR status on that basis as well.

---

even as late as her second naturalization interview in 2011. Haser attributes the omission of this information from her (handwritten) asylum statement to "unscrupulous work by a notario and an attorney." She does not argue that that alleged circumstance by itself renders her admission "lawful," and it does not. See Gallimore, 619 F.3d at 224 n.6 (citing, inter alia, Walker v. Holder, 589 F.3d 12, 20–21 (1st Cir. 2009)).

5

Haser does not allege that she has taken any of these steps. Nor has she cited any authority authorizing or requiring USCIS or the District Court to adjudicate those issues in the context of this naturalization proceeding.[3] We are aware of none. Thus, we express no opinion on whether it might still be possible for Haser to seek asylum and a "readjustment" of status on the basis of her allegations regarding persecution in Sweden. Cf. Turfah v. USCIS, 845 F.3d 668, 676–77 (6th Cir. 2017) (Boggs, J., concurring) (noting that "[t]here is no explicit mechanism for an immigrant who already has LPR status to petition for an adjustment so as to be deemed 'lawfully admitted'" for naturalization purposes). We note, however, that Haser's attempt to raise this asylum claim many years after arriving in the United States might be untimely. See 8 U.S.C. § 1158(a)(2)(B), (D).

III.

For these reasons, we will affirm the judgment of the District Court.

---

[3] The only authority on which Haser relies for this proposition is our statement that "an alien who has obtained lawful permanent resident status by fraud, or who was otherwise not entitled to it, has not been lawfully admitted." Koszelnik, 828 F.3d at 180 (emphasis added). Haser argues that she was "otherwise entitled" to her LRP status because she suffered persecution in Sweden. Our statement in Koszelnik, however, refers to reasons for concluding that a noncitizen's existing LPR status does not constitute a lawful admission. That statement does not support a free-ranging inquiry into whether a noncitizen might have been eligible for lawful LPR status on the basis of some other unapplied-for ground.