NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1577
_____

NAEEM AKHTAR,
Appellant

v.

DIRECTOR UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES MT.
LAUREL FIELD OFFICE; ACTING DIRECTOR UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES; SECRETARY UNITED STATES DEPARTMENT
OF HOMELAND SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-21-cv-00658)
District Judge: Honorable Georgette Castner
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on January 30, 2024

Before: CHAGARES, *Chief Judge*, RESTREPO, and FREEMAN, *Circuit Judges*

(Filed: April 3, 2024)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*

Naeem Akhtar appeals the District Court's order granting summary judgment to U.S. Citizenship and Immigration Services (USCIS) officials and reaffirming USCIS's denial of Ahktar's application for naturalization. To prevail, Akhtar must prove by a preponderance of the evidence that he meets the requirements for naturalization. 8 U.S.C. § 1361; 8 C.F.R. § 316.2(b). Because we agree with the District Court's determination that Akhtar has not met this burden, we will affirm.

I.

Akhtar is a native and citizen of Pakistan who resides in New Jersey. He first entered the United States at the Canadian border without inspection and admission or parole, on or about September 4, 1999. In 2005, Akhtar applied for temporary resident status and was granted advance parole for the period of September 22, 2005 to September 21, 2006. Akhtar never left the United States during the designated period, but he married a U.S. citizen on July 5, 2006. His spouse filed a petition to classify Akhtar as an immediate relative, which USCIS granted on July 19, 2007. Akhtar's 2005 application for temporary resident status was ultimately denied in August 2007.

On May 7, 2010, Akhtar applied for advance parole and adjustment of status to that of lawful permanent resident. USCIS granted Akhtar advance parole on June 10, 2010. He departed the United States for Pakistan on June 21, 2010 to visit his mother, who was then suffering from a serious illness. Akhtar was inspected and paroled into the United States upon his return on July 26, 2010, to resume the processing of his pending adjustment of status application. USCIS granted Akhtar's application for adjustment of

2

status on March 12, 2013.

Akhtar filed a petition for naturalization in December 2017. On December 17, 2018, USCIS denied the petition, finding Akhtar had no lawful nonimmigrant status when he applied for adjustment of status on May 7, 2010. Following Akhtar's request for a hearing, USCIS reaffirmed its denial of his naturalization application on October 30, 2020. On January 13, 2021, Akhtar filed a complaint in the U.S. District Court for the District of New Jersey, seeking de novo review of his application for naturalization pursuant to 8 U.S.C. § 1421(c). The District Court issued a decision and order on February 27, 2023, granting the government's motion for summary judgment. Akhtar timely appealed.

## II.[1]

We review the District Court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party, *Smith v. Mensinger*, 293 F.3d 641, 647 (3d Cir. 2002), but limit our review to the denial of Akhtar's naturalization application, 8 U.S.C. § 1421(c). An applicant for naturalization has the burden of proving "by a preponderance of the evidence that he or she meets all of the requirements for naturalization." 8 C.F.R. § 316.2(b); 8 U.S.C. § 1361.

Akhtar argues that he met this burden because the USCIS adjudicator who approved his application for adjustment of status had the discretion and authority to

---

[1] The District Court had jurisdiction to review the denial of Akhtar's naturalization application pursuant to 8 U.S.C. § 1421(c). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

conclude that Akhtar satisfied the requirements for lawful permanent residence under

8 U.S.C. § 1255(a) based on either his 2005 grant of advance parole or his 2010

inspection and parole. We disagree.

Lawful admission for permanent residence is among several requirements for

naturalization. *See* 8 U.S.C. §§ 1427(a) and 1429. An applicant[2] for adjustment of status

to that of lawful permanent resident must have been "inspected and admitted or paroled

into the United States."[3] 8 U.S.C. § 1255(a). "A 'paroled' [noncitizen] is one who is

temporarily permitted to remain in the United States pending a decision regarding his

application for admission." *Bamba v. Riley*, 366 F.3d 195, 196 n.2 (3d Cir. 2004) (citing

---

[2] Applicants must be eligible for a requested benefit at the time of filing and remain eligible throughout adjudication. 8 C.F.R. § 103.2(b)(1). We are unpersuaded by Akhtar's argument that 8 C.F.R. § 103.2 conflicts with our holding in *Robinson v. Napolitano*, 554 F.3d 358 (3d Cir. 2009). In *Robinson*, we held "eligibility for an immediate relative visa depends upon the [noncitizen]'s status at the time USCIS adjudicates the I-130 petition, not when that petition was filed." *Id.* at 364. We did not address the "inspected and admitted or paroled" requirement in 8 U.S.C. § 1255 or the requisite "lawfully admitted" standard for naturalization under 8 U.S.C. § 1429, which are at issue here.

[3] The "inspected and admitted or paroled" requirement must be satisfied before a noncitizen applies for adjustment of status. USCIS Policy Manual, Vol. 7, Part B, Ch. 2.A (citing 8 C.F.R. § 245.1(b)(3)); legacy INS General Counsel Opinion 94-28, 1994 WL 1753132, at *1 ("Congress enacted Sec. 245 in such a manner that persons who entered the United States without inspection are ineligible to adjust."); S. Rep. 86-1651, 1960 U.S.C.C.A.N. 3124, 3136 ("This legislation will not benefit the [noncitizen] who has entered the United States in violation of the law."); and *id.* at 3137 ("The wording of the amendment is such as not to grant eligibility for adjustment of status to . . . [noncitizens] who entered the United States surreptitiously.")).

8 U.S.C. § 1182(d)(5)).[4] When used to enter the United States initially or after travel, parole "amounts to permission . . . for ingress into the country but is not a formal 'admission.'" *Id.* (quoting *Chi Thon Ngo v. INS*, 192 F.3d 390, 392 n.1 (3d Cir. 1999)).

Noncitizens who are present in the United States without having been admitted or paroled are considered inadmissible applicants for admission.[5] *See* 8 U.S.C. § 1225(a)(1); § 1182(a)(6)(A)(i). Applicants for admission may request parole under 8 U.S.C. § 1182(d)(5)(A), which gives the Secretary of Homeland Security authority to parole from custody a noncitizen applying for admission who would otherwise be held in custody until the Department of Homeland Security had resolved whether to admit or remove them. *Id.* This authority is discretionary and exercised "on a case-by-case basis," upon finding either that "urgent humanitarian reasons" justify the parole, or that parole will yield a "significant public benefit." *Id.*

Advance parole is an administrative procedure whereby the government decides in advance of a noncitizen's arrival that the individual will be paroled into the United States upon arrival at a port of entry. *See* 8 C.F.R. § 212.5(f). Advance parole is often "granted

---

[4] A noncitizen is paroled if "[t]hey are seeking admission to the United States at a port of entry" and "[a]n immigration officer inspected them as a[] [noncitizen] and permitted them to enter the United States without determining whether they may be admitted into the United States." 7 USCIS Policy Manual, Pt. B, Ch. 2.A.3.

[5] A noncitizen who entered the United States without inspection may be eligible for adjustment of status under Section 1255(i) only if the applicant is the beneficiary of a petition or labor certification filed on or before April 30, 2001 and complies with certain filing and fee payment requirements. 8 U.S.C. § 1255(i).

to [noncitizens] residing in the United States who have a need to travel abroad, but whose immigration status would not afford them a right to legal admission upon their return." *Ibragimov v. Gonzales*, 476 F.3d 125, 132 (2d Cir. 2007).

Noncitizens in the United States who have a pending application for adjustment of status commonly seek advance parole to obtain a means of departing and returning without abandoning their application. *See* 8 C.F.R. § 245.2(a)(4)(ii)(A) ("[T]he departure of an [adjustment] applicant . . . shall be deemed an abandonment of the application constituting grounds for termination of any pending application for adjustment of status, unless the applicant was previously granted advance parole . . . and was inspected upon returning to the United States."). Applicants who seek temporary departure for emergent personal reasons during the pendency of an application are one of the few classes of noncitizens who are eligible for advance parole. *See* USCIS Policy Manual, Vol. 11, Part E (Adjudicator's Field Manual Ch. 54.3(a)(3)).

While advance parole functions as permission to travel for a specified humanitarian purpose and thereafter return to the United States, the actual decision to parole is discretionary, 8 U.S.C. § 1182(d)(5)(A), and is made at the port of entry. *See* 71 Fed. Reg. 27,585, 27,586 n.1 (May 12, 2006). Thus, inspection at a port of entry is a mandatory component of parole, except in the rare circumstance that an applicant has requested and been granted parole in place. Parole in place is granted sparingly and is

generally reserved for active and former U.S. military members and their families. *See*

USCIS Policy Manual, Vol. 7, Part B, Ch. 2.A.3.[6]

III.

Akhtar is unable to demonstrate that he is eligible for naturalization because he

cannot demonstrate that he was lawfully admitted to the United States for permanent

residence. *See Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 179 (3d Cir.

2016). "[T]he term 'lawfully' denotes compliance with substantive legal requirements,

not mere procedural regularity[.]" *Gallimore v. Att'y Gen.*, 619 F.3d 216, 223 (3d Cir.

2010) (citation omitted).

Akhtar was inadmissible when he first entered the United States in 1999 because

he was not then inspected and admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

Although he was granted advance parole in 2005, Akhtar did not leave the country at that

time and was never inspected at a port of entry where a decision to parole could be made.

We lack the authority to construe this discretionary grant of advance parole as parole in

place. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Leastwise, Akhtar has provided no evidence that

---

[6] *See also* U.S. Dep't Homeland Sec., U.S. Citizenship & Immigr. Servs, *Parole of Spouses, Children and Parents of Active Duty Members of the U.S. Armed Forces, the Selected Reserve of the Ready Reserve, and Former Members of the U.S. Armed Forces or Selected Reserve of the Ready Reserve and the Effect of Parole on Inadmissibility under Immigration and Nationality Act § 212(a)(6)(A)(i)*, Policy Memorandum, November 15, 2013, available at https://www.uscis.gov/sites/default/files/document/memos/2013-1115_Parole_in_Place_Memo_.pdf (discussing reasons for use of parole in place for United States military service members and veterans, who experience stress and anxiety due to their family members' immigration status, which can affect military preparedness).

he was eligible to receive this rare privilege through affiliation with the United States Armed Forces.

Accordingly, Akhtar remained inadmissible when he applied for adjustment of status on May 7, 2010 because he had not been inspected and paroled. An applicant for adjustment of status must possess a lawful status from which to adjust. *See* 8 U.S.C. § 1255(c) ("[S]ubsection (a) shall not be applicable to . . . a[] [noncitizen] . . . who is in unlawful immigration status on the date of filing the application for adjustment of status . . . ."). Having no lawful nonimmigrant status, Section 1255(c) barred Akhtar from adjustment of status under Section 1255(a) until he married a U.S. citizen and became an immediate relative. *See* 8 U.S.C. §§ 1151(b), 1255(c)(2). But even then, Akhtar remained ineligible due to his inadmissibility. *See* 8 U.S.C. § 1255(a) ("The status of a[] [noncitizen] who was inspected and admitted or paroled into the United States . . . may be adjusted . . . [if] the [noncitizen] is eligible to receive an immigrant visa *and is admissible to the United States for permanent residence* . . . ." (emphasis added)).

Notwithstanding his ineligibility, Akhtar could only obtain advance parole for emergent humanitarian reasons (i.e., his mother's declining health) in connection with a pending application for admission. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 245.2(a)(4)(ii)(A). But Akhtar did not cure his inadmissibility until July 26, 2010 when he was inspected and paroled at a port of entry, months after he submitted his application. *See Delgado-Sobalvarro v. Att'y Gen.*, 625 F.3d 782, 785 (3d Cir. 2010) ("[O]nly if a[] [noncitizen] has been admitted or paroled into the United States does []he become eligible to adjust h[is] status." (internal quotations omitted)).

8

USCIS' approval of Akhtar's application for adjustment of status does not satisfy the requirement that an applicant for naturalization be "lawfully admitted for permanent residence." *See* 8 U.S.C. §§ 1427(a), 1429. We are bound by our precedents, which hold that "even in cases not involving fraud, a grant of permanent resident status does not meet the standard of 'lawful admission' if the applicant was not legally entitled to it for any reason." *Koszelnik*, 828 F.3d at 180 (citing *Gallimore*, 619 F.3d at 224). Having exceeded the statute of limitations for revocation, Akhtar's status as lawful permanent resident is now vested. *See* 8 U.S.C. § 1256(a); *Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724, 728 (3d Cir. 2009). But this does not mean that Akhtar is lawfully eligible for naturalization.

IV.

For the foregoing reasons, we will affirm the District Court's order.