THE AKRON COLD SPRING CO. *v.* UNKNOWN HEIRS,
ETC., OF ELY.

*Deeds—Conveyance subject to rights to a spring—Construed as exception from grant of fee.*

The recital in a warranty deed conveying land to one Hartman, that the land conveyed is "subject * * * to all rights of The Akron Cold Spring Company to the spring of water on said land, together with not exceeding 60 / 100 of an acre of land for a reservoir at said spring," will be construed as an exception from the grant of the fee to Hartman of 60 / 100 of an acre of land, when considered in connection with the facts that at the time the deed was executed and delivered the Spring Company was in possession and occupancy of the land surrounding the spring under a contract with the former owner; that several months after the execution of the deed to Hartman the grantor thereof executed and delivered a warranty deed conveying to the Spring Company a conditional fee in the 60 / 100 acre of land excepted in the Hartman deed, reserving the right of reentry in case the grantee failed to comply with the conditions of the deed, and reciting that the Spring Company had complied with the agreement with the original owner, under which it was in possession; and that in conformity with that agreement, and for a consideration of one dollar, grantor made the conveyance.

(Decided June 8, 1923.)

APPEAL: Court of Appeals for Summit county.

*Mr. John B. Oviatt* and *Mr. Ray B. Colton,* for plaintiff.

*Mr. E. C. Myers,* for defendants.

WASHBURN, J. This matter is before this court on appeal, and presents for the most part questions

of law only. The action is to quiet title to land that the plaintiff has been in the possession of for more than seventy years.

Justin Ely was the owner of certain real estate in the township of Portage, Summit county, Ohio, which is now a part of the city of Akron. On this property there was a valuable spring, concerning which there was an agreement between Justin Ely and "some of the members" of The Akron Cold Spring Company, which was then a corporation. Just what that agreement was cannot now be definitely established.

On February 1, 1855, Justin Ely having died, the executors of his estate executed and delivered to Michael Hartman a warranty deed of all of said land, the conveyance "being subject to all legal highways, also to all rights of The Akron Cold Spring Company to the spring of water on said land, *together with not exceeding 60/100 of an acre of land for a reservoir at said spring,* with the right to use stone for the construction of said reservoir from the land so reserved to said company. It being understood that said reservoir is to be enclosed by a good fence by said company and maintained by them."

It appears from the records of The Akron Cold Spring Company, which are in evidence, that a charter was granted to the company by special act of the Legislature in 1848, and that the company was authorized in that charter to acquire a spring upon the property, the title to which is involved in this action, and for that purpose the corporation was authorized to purchase and hold such real and personal estate as was necessary for constructing, maintaining and keeping in repair an aqueduct and

its appendages, and was also authorized to dispose of the same by lease, deed or other conveyance. The record further discloses that the company immediately thereafter organized for business, and that in December, 1849, a contract was let for the digging of ditches and laying of pipe, and that as early as the year 1850 the company was delivering water and receiving pay therefor, and as early as the year 1851 the company began to pay dividends to its stockholders. It is apparent, therefore, that at the time of the execution and delivery of the foregoing deed to Michael Hartman on February 1, 1855, that company was in the possession and occupancy of the land surrounding the spring, under a contract, or agreement, between Justin Ely and "some of the members" of The Akron Cold Spring Company, acting for that corporation.

In the light of subsequent events, which will be hereinafter referred to, we construe the above language of the deed as an exception from the grant to Hartman of the fee of at least '60/100 of an acre of land. It is true the provision is that the conveyance is *subject* to the rights of The Akron Cold Spring Company, and it is also true that the 60/100 acre of land is referred to as *reserved* to said company.

A reservation is something taken back out of that which is clearly granted, and an exception is some part of the estate not granted at all, and in determining whether the language used was intended by the parties to be a reservation or to constitute an exception courts generally ignore the terms used and determine the question according to the nature of the right sought to be created; if an easement is being created, the words

will be construed as a reservation, and if the ownership is retained, then they are considered as an exception. 2 Tiffany on Real Property (2 ed.), 1608, and *Sloan* v. *Lawrence Furnace Co.*, 29 Ohio St., 568.

While the language used in the deed in question is susceptible of the construction that it was the intention of the parties to create an easement, a part of the language used is susceptible of the construction that the parties intended to except from the grant not exceeding 60/100 acre of land. It seems to us that what the parties intended is made plain by what they subsequently did. It must be borne in mind that there was some sort of an agreement between Justin Ely and the Spring Company, or those who were promoting the Spring Company, and that the executors of Justin Ely, when they made the deed in question, had that agreement in mind.

Subsequent to the agreement, and about seven months after the deed to Hartman, the executors of Justin Ely, in carrying out that agreement, executed and delivered to the Spring Company a warranty deed of 56/100 of an acre of land, which was the subject of the reservation or exception in the deed to Hartman. That deed from the executors of Justin Ely to the Spring Company recited that the Spring Company had made a good stone reservoir at the spring, and had laid an aqueduct of iron pipe leading from such reservoir, and had enclosed the land to be used in connection with the spring with a good and sufficient fence "in conformity with an agreement entered into between some of the members of said corporation and Justin Ely," and the deed recites that for

a consideration of $1 said executors "do give, grant, bargain and sell and confirm unto said Akron Cold Spring Company, the successors and assigns of said company forever," 56/100 acres of land, described by metes and bounds, "to have and to hold to the said Akron Cold Spring Company in Akron and the successors and assigns of said company forever, in trust nevertheless, for the ends and purposes hereinafter declared, that is to say * * *." A provision follows that the land shall be used and occupied for the sole and mere purpose of maintaining thereon a reservoir for the supply of water, and for no other purpose whatever. The deed also recites that "provided nevertheless and these presents are on the express condition following,"—and then follows an enumeration of certain things that the Spring Company is to do, which if not done shall give said executors "the right to re-enter and repossess said premises and appurtenances as in our of their former estate or estates." That deed was recorded September 8, 1855, and the Spring Company was then and has ever since been in the exclusive occupancy and possession of the land therein described.

Said executors by giving to the Spring Company a conditional fee, reserving to themselves the right of re-entry on condition broken, plainly indicates that it was their intention in their deed to Michael Hartman to except therefrom the fee of "not exceeding 60/100 of an acre of land for reservoir at said spring" and was not their intention by the language used to convey the land subject only to an easement of the Spring Company. The language of the Hartman deed is in-

definite and uncertain, and this construction of the same by the executors, which clearly shows their intention in using the language they did in the Hartman deed, was duly filed and recorded in the records of the county, and if Hartman was not charged with notice thereof, his successors in title were charged with such notice. The deeds from Hartman and the succeeding deeds in the chain of title all contained a reference *to the rights of the Spring Company*, and notice of what those rights were claimed to be was contained in the deed to the Spring Company from the executors, which was on file. Hartman and his successors in title have acquiesced all these years in the construction placed upon the language used in the Hartman deed by the grantors therein, and they ought not now to be permitted to repudiate a construction which was justified by the language used, and which has been acquiesced in for more than half a century.

If this conclusion is right, the successors in title of Hartman have no interest in the land described in the deed to the Spring Company, and the title of the Spring Company in such land should be quieted against such successors in title, who are claiming an interest in the land, and who are parties to this suit.

The same conclusion may be reached from an entirely different course of reasoning.

If it be conceded that the deed to Hartman conveyed a fee simple title to the land which was afterwards conveyed by the executors to the Spring Company, it follows that the Spring Company obtained no right in the premises by the deed to it from such executors, and it is also true

that the Spring Company received no right in said property from the language used in the Hartman deed, the same being construed as a reservation in the nature of an easement, for the reason that the Spring Company was not a party to that deed, and a reservation in a deed is ineffectual to create title in a stranger to the conveyance; a reservation is something issuing from or coming out of the thing granted, and must be to the grantor or party executing the conveyance and not to a stranger. 2 Tiffany on Real Property (2 ed.), 1614.

Such reservation, for the purpose of this case, on the theory we are now considering the same, is simply void and of no effect whatever, and, in that view, Hartman received by his deed a fee simple title not subject to any rights of the Spring Company.

It follows, therefore, if the Spring Company obtained no rights in the property from the deed of the executors to it, or from the deed of the executors to Hartman, that then the Spring Company has been in the open, notorious, exclusive, adverse possession of the property for seventy years, and that the defendants, who are successors in title from Hartman, have no valid claim of an interest therein. For that reason the title of the Spring Company should be quieted as against the claims of such parties.

Independent of all the foregoing reasons why the title of the plaintiff should be quieted against the present successors in title to Hartman is the fact that the plaintiff was in the actual possession of the real estate in question at the time the Hartman deed was delivered. This possession was no-

tice to Hartman of the rights and claims of the plaintiff, a claim of conditional fee, as was shown by the deed which was subsequently delivered to it, and the adverse possession of the plaintiff started not later than the time the deed was delivered.

The plaintiff was not bound by the recitation in the Hartman deed which in any way limited or attempted to describe its interest in the property which it had by contract with Justin Ely, and which was wholly protected by its actual possession of the property.

As to the defendants, who are the unknown heirs of Justin Ely and his executors, the Spring Company has no right at this time to an order quieting its title, the facts being that the use of the property by the Spring Company has always been and is now in accordance with the conditions contained in the deed, and therefore such heirs have not had and do not now have any right of reentry.

As to all defendants except the successors in title of Hartman the petition may be dismissed without prejudice, and a decree may be drawn quieting the title of the Spring Company as to the other defendants.

*Decree accordingly.*

PARDEE, J., concurs in decree, and the reasons assigned therefor.

FUNK, P. J., dissenting. The rights of the parties to this suit turn primarily upon the question whether or not the exception in the deed to Hartman, made February 1, 1855, is to be construed as a fee or an easement. I agree with my asso-

ciates that the language in the deed to Hartman should be construed as an exception, and not as a reservation, but I do not agree with them in construing the exception as a fee. That an easement of a water right such as this, apparently granted in gross, may be the subject of an exception, which may be transferred, inherited or devised, and that it is not necessarily true that. if an easement is being created the words must be construed as a reservation, is supported by ample authority, and I believe this to be especially true of the more modern tendency of judicial opinion— there being a marked distinction between a way in gross and an easement of a right to take water from a well or spring, or a right of profit *a prendre*. 19 Corpus Juris, 866-867, and notes; *Amidon* v. *Harris*, 113 Mass., 59; *Bank of British North America* v. *Miller*, 6 Fed., 545; *Goodrich* v. *Burbank*, 12 Allen (94 Mass.), 459.

Under the well-established rule that a deed containing exceptions or reservations must be construed most strongly against the grantor, I am of the opinion that the deed to Hartman conveyed the fee to the whole tract and excepted only the use of the spring and the land for a reservoir so long as it was used for that purpose. If the deed to plaintiff had been executed before the deed to Hartman, there could be no question about plaintiff's right to a conditional fee in this land, but, having been executed seven months after the deed to Hartman under the above rule, the exception retained by the Ely heirs in the deed to Hartman should be construed as an easement, and the executors could convey to plaintiff nothing but this easement.

We all agree that a reservation in favor of a
third person is void, and that plaintiff could get
nothing by the deed to Hartman, whether the
wording be construed to be a reservation or an
exception. While it is clear that plaintiff could
get nothing by the deed to Hartman, yet it is just
as clear to me that plaintiff could not get anything
by the deed to it of property that had already.
been conveyed to Hartman.

It is admitted in the majority opinion that the
language used in the Hartman deed is susceptible
of the construction that it was the intention of
the parties to create only an easement, and for
the reason that the language in the Hartman deed
is indefinite it should be construed in the light of
and in connection with the deed given to plaintiff,
and that this deed having conveyed a conditional
fee is notice to Hartman and his successors in
title that plaintiff holds possession under this deed
adverse to Hartman and his assigns. However,
as plaintiff's possession is equally referable to an
easement, and consistent with the terms accepted
by Hartman in the deed to him, I cannot see that
such possession is adverse until plaintiff does some
overt act to show that he claims something more
than Hartman consented to in accepting his deed
from the Ely heirs. *Kelley* v. *Armstrong*, 102
Ohio St., 478, 479.

It is just as reasonable that plaintiff's deed be
construed in the light of the deed to Hartman, and
that it be held that the deed conveying a fee to
Hartman is notice to plaintiff that Hartman has
the fee and that the plaintiff could get nothing
but an easement, and that if it claimed more it
must do something to put Hartman or his as-

signs on notice. The fact that A deeds property to C, which has already been deeded to B and recorded, does not require B to take any action against C until C does some act to take control of the property.

While it is clear from the record that plaintiff was using water from this spring prior to the deed to Hartman, it is also just as clear from the wording of the deeds to Hartman and plaintiff that the stone reservoir and fence enclosing the same were not constructed until after the deed to Hartman was executed. It is further apparent from the deed to plaintiff that the aqueduct, reservoir and fence were constructed in accordance with an agreement between Justin Ely and some of the members of plaintiff corporation, so that so far as the record is concerned there was no real contract or agreement between Justin Ely, or his heirs, and plaintiff, until the deed was executed to it long after the deed to Hartman had been executed. Again, there being nothing in the record to show that there was a reservoir of any kind on this land prior to the deed to Hartman, and there being nothing in the record to show by what kind of an agreement plaintiff was using the water from this spring prior to the deed to Hartman, and it being apparent from the deed to plaintiff that it had no real contract for itself, but was acting merely under an agreement with some of the members of the corporation, I cannot see that the deed to plaintiff is any notice to Hartman or his assigns until something is done by plaintiff to show that it claims something more than was consented to by Hartman in accepting his deed.

Again, a part of the right excepted in the deed

to Hartman is "The right to use stone for the construction of said reservoir from the land so reserved to said company." This right to use stone from this 57/100 of an acre is consistent only with an easement and the conveyance of the fee to Hartman, because if the *fee* was excepted, and remained in the Ely heirs, and was conveyed to plaintiff, that would carry with it the right to use the stone off this land as a matter of right without any special exception of such right in the deed.

While the wording in the first part of the deed to plaintiff, considered in connection with the re-entry clause, standing alone, would convey a conditional fee, yet in construing a deed the whole of it must be taken into consideration. With this rule in mind, the wording referred to, when considered in connection with the habendum clause and the remainder of the three conditional clauses, and especially when construed in the light of and in connection with the prior deed to Hartman, convinces me that the deed to plaintiff conveyed only the right to use, instead of a fee.

Again, plaintiff claims that its possession is adverse, and not permissive, as to Hartman, because there is no grant of any kind by him to plaintiff, and that therefore his possession is adverse, it being conceded that one of the essential requisites to the gaining of an easement by adverse possession is that it be not a matter of permission asked by one party and granted by the other. While it is true that there was no grant by Hartman to plaintiff, it is also true that Hartman accepted a deed subject to plaintiff's right of user, and thereby did consent to permit plaintiff to use the

land for the purpose set forth in the deed to him, and, although plaintiff has had the possession of these premises for more than seventy years, it is admitted that plaintiff has not attempted to use the same for any other purpose, or in any other manner, than that provided for in the deed to Hartman. Under the well-established rule, that a grantee who at the time of his purchase had actual knowledge of the existence of an easement is bound by such knowledge and cannot afterwards dispute the existence of the easement, Hartman or his assigns could not have prevented plaintiff from so using the spring and reservoir, even had they attempted to do so. The only claim that plaintiff can have that its holding was adverse is that the deed to plaintiff, executed seven months after the deed to Hartman, is claimed to have conveyed a conditional fee. I cannot agree with my associates that the deed to plaintiff, which is to me in the nature of a self-serving declaration, can in itself be any notice to Hartman, or his assigns, that plaintiff was holding adversely to them.

Neither can I agree, even if the deed to plaintiff does in words convey a conditional fee, that it is any notice to Hartman and his assigns that plaintiff is holding adverse to them, so long as plaintiff uses and occupies the premises conveyed in absolute and complete harmony with the exception in the deed to Hartman. Plaintiff's possession having been obtained by permission from the Ely heirs, and acquiesced in by Hartman in accepting this deed, subject to plaintiff's right to use the property for water and reservoir purposes, it is my opinion that, so long as *plaintiff does no overt act* to put Hartman or his assigns on notice that

it claims to hold a fee adverse to Hartman and his assigns, the statute of limitation does not begin to run. It is clear that the record simply shows such possession as is necessary to the full enjoyment of the easement, and that plaintiff has done nothing inconsistent with the exception in Hartman's deed that would cause the statute of limitations to run as against Hartman or his assigns except the bringing of this action, and I hold that such possession is not adverse to any of the defendants. *Kelley* v. *Armstrong, supra,* and *Pinkum* v. *City of Eau Claire,* 81 Wis., 301, 51 N. W., 550.

Holding as I do, it is my conclusion that plaintiff has no right at this time to an order quieting its title to the fee in the lands described in the petition, and that the petition should be dismissed as to the successors in title of Hartman, as well as all other defendants.