**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3286
_____

OUSMANE SAVANE,
Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; DIRECTOR UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES
PHILADELPHIA FIELD OFFICE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:24-cv-00224)
District Judge: Honorable Wendy Beetlestone
_____

Argued on October 21, 2025

Before: HARDIMAN, FREEMAN, and CHUNG, *Circuit
Judges*.

(Filed: January 7, 2026)

Timothy P. Creech [**Argued**]
Creech & Creech
1835 Market Street
Suite 2710
Philadelphia, PA 19103

    *Counsel for Appellant*


Zachary A. Cardin [**Argued**]
Yaakov M. Roth
United States Department of Justice
Civil Division
550 11th Street NW
Washington, D.C. 20530

William C. Silvis
Michael Celone
Marie Feyche
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, D.C. 20044

    *Counsel for Appellee*

———————

OPINION OF THE COURT

———————

**HARDIMAN**, *Circuit Judge*.

Appellant Ousmane Savane was admitted to the United States through the Diversity Visa Program. A permanent resident since 2012, he applied in 2020 to become a naturalized citizen. The United States Citizenship and Immigration Service (USCIS) denied Savane's application after determining that he had omitted material information on his Application for Immigrant Visa and Alien Registration when he first entered the United States. After his administrative appeal failed, Savane petitioned for review in the United States District Court for the Eastern District of Pennsylvania. The District Court granted summary judgment for the Government. In this appeal, Savane argues that his omissions were immaterial. We disagree and will affirm the District Court's judgment.

I

A

The Diversity Visa Program, enacted as part of the Immigration Act of 1990, created a lottery system to allocate up to 55,000 immigrant visas to individuals from countries with low rates of immigration to the United States.[1] Congress also empowered the Secretary of State to issue regulations necessary to implement the Program.[2] Those regulations require aliens to petition to enter a lottery.[3] The petition, known as an "eDV," requires certain biographical information, including: "[t]he name[s], date[s] and place[s] of birth and gender of the petitioner's . . . child[ren], if any . . . regardless

---

[1] 8 U.S.C. §§ 1151(e), 1153(c).
[2] 8 U.S.C. § 1154(a)(1)(I)(ii)(III).
[3] 22 C.F.R. § 42.33(b).

3

of whether or not they are living with the petitioner or intend to accompany or follow to join the petitioner should the petitioner immigrate to the United States."[4]

A petitioner who is selected in the lottery must complete an Application for Immigrant Visa and Alien Registration, known as a DS-230.[5] The DS-230 requires the names, dates, and places of birth, and addresses of "ALL Children."[6] If a question does not apply, the petitioner is instructed to mark "N/A."[7] After submitting a DS-230, the "petitioner" becomes an "applicant" and interviews with a United States consular official in his home country.[8] If approved by the consular officer and admitted at a port of entry, the applicant attains lawful permanent resident status.[9]

Lawful permanent residents, in turn, may apply for citizenship by submitting an Application for Naturalization, known as an N-400. Among other requirements, the applicant must establish that he was "lawfully admitted for permanent residence."[10] And the applicant must appear for an in-person examination by an officer from USCIS.[11] If USCIS denies the N-400, the applicant can file an administrative appeal and

---

[4] 22 C.F.R. § 42.33(b)(1)(v).

[5] 22 C.F.R. § 42.63(a).

[6] App. 21.

[7] U.S. Dep't of State, Form DS-230, https://perma.cc/DF2N-7WWV (last visited Oct. 3, 2025).

[8] 22 C.F.R. § 42.62(a).

[9] 8 U.S.C. § 1202(b).

[10] 8 U.S.C. § 1427(a).

[11] 8 C.F.R. § 335.2(a).

request a hearing.[12] If that appeal fails, the alien can petition for review in the district court where he resides.[13]

B

Ousmane Savane, a citizen of Cote D'Ivoire, applied to the Diversity Visa Program in 2011. When he completed his eDV, Savane failed to disclose that he had two children, even though the petition required that information.[14] After Savane was selected in the lottery, he completed the DS-230 to obtain an immigrant visa and lawful permanent residency. Where the form required the "Names, Dates and Places of Birth, and Addresses of ALL Children," Savane responded "N/A."[15] He signed the DS-230, certifying that his response to the questions were "true and complete."[16] Savane later explained that he did not disclose his children because the "coach"[17] who helped him complete the forms advised him for "financial reasons to go

---

[12] 8 C.F.R. § 336.2.

[13] 8 U.S.C. § 1421(c).

[14] *See* 22 C.F.R. § 42.33(b)(1)(v).

[15] App. 21, 82.

[16] App. 81.

[17] The Department of State encourages applicants to fill out the eDV on their own, without the assistance of another—especially a person who is being paid to assist them. App. 41. Though the Department does not issue the same advice as to the DS-230, applicants are warned that the content must be certified under oath to be true and correct. App. 56. Despite this advice, Savane submitted both the eDV and the DS-230 "through a coach" who "helped him to fill out the forms" and submit the application. App. 73-75. He paid the coach for his assistance and communicated with the coach mainly in French. Savane "did not fill out anything." App. 81.

alone to the United States."[18] When Savane was interviewed by a United States consular officer in Cote D'Ivoire, the officer did not ask if Savane had children, and Savane did not disclose that he did. Savane immigrated to the United States and obtained lawful permanent resident status in 2012.

In October 2020, USCIS received Savane's Application for Naturalization (N-400). By this time, he had four children, all of whom he disclosed. And Savane admitted on his N-400 that he had previously "given . . . U.S. government officials . . . information or documentation that [was] false, fraudulent or misleading."[19] But he denied that he had "ever lied to any U.S. government officials to gain entry or admission into the United States or to gain immigration benefits while in the United States."[20] Savane also said that he listed his children on his N-400 because he wanted them and his wife to immigrate to the United States.

Savane interviewed with a USCIS officer regarding his naturalization application. At that interview, he changed his answer to the question: "Have you ever lied to any U.S. government officials to gain entry or admission into the United States or to gain immigration benefits while in the United States?" from "No" to "Yes."[21] About a year later, USCIS denied Savane's application for naturalization, concluding that he had not been lawfully admitted for permanent residence because of his omissions on the DS-230 (the Application for Immigrant Visa and Alien Registration). Savane then requested review of that decision and received a hearing where

---

[18] App. 82.
[19] App. 90.
[20] App. 90–91.
[21] App. 6, 98–100.

he argued that his omission was immaterial. USCIS re-interviewed Savane and affirmed its denial of the Application for Naturalization.

Savane petitioned for review of USCIS's denial in the United States District Court for the Eastern District of Pennsylvania under 8 U.S.C. § 1421(c). The Government moved for summary judgment, arguing that Savane could not meet his burden to prove that he was lawfully admitted for permanent residence.

The parties disputed whether Savane willfully misrepresented a material fact on his DS-230. But the District Court explained that it did not need to decide whether Savane's omissions were willful under 8 C.F.R. § 103.2(a)(2). "As a textual matter," the Court reasoned, that regulation requires only that an alien certify that the information contained in his application is true and correct.[22] Section 103.2(a)(2) does not mention willfulness (or any other mental state). So the District Court explained that the relevant issue was whether Savane's omission of his children on his eDV and DS-230 was material.

The District Court held that Savane's omission was material because it "tend[ed] to shut off a line of inquiry which [was] relevant" to his "eligibility and which might well have resulted in a proper determination that he be excluded."[23] The Court reasoned that had Savane disclosed his children on his DS-230, the consular officer may "have inquired about his children and decided—depending on Savane's answers about

---

[22] *Savane v. Majorkas*, 2024 WL 4876926, at *4 (E.D. Pa. Nov. 22, 2024).
[23] *Id.* at *5 (quoting *Saliba v. Att'y Gen. of United States*, 828 F.3d 182, 190 n.7 (3d Cir. 2016)).

7

whether he intended them to immigrate with him—to deny his application."[24] The Court stressed that the standard is not whether officials necessarily would have denied Savane's visa application had they known the truth, but whether the omission tended to shut off a relevant line of inquiry. Because it perceived no genuine dispute of material fact on that point, the District Court granted the Government summary judgment.

## II

The District Court had jurisdiction under 8 U.S.C. § 1421(c). We have jurisdiction under 28 U.S.C. § 1291. Our review is de novo and we apply "the same standard the District Court applied."[25] Summary judgment is appropriate when the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] We "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."[27]

## III

### A

As an applicant for naturalization, Savane had to show that he: (1) has "resided continuously, after being lawfully admitted for permanent residence, within the United States for

---

[24] *Id.*

[25] *Alcoa, Inc. v. United States*, 509 F.3d 173, 175 (3d Cir. 2007).

[26] Fed. R. Civ. P. 56(a).

[27] *Stratechuk v. Bd. of Educ., S. Orange-Maplewood Sch. Dist.*, 587 F.3d 597, 603 (3d Cir. 2009) (citation omitted).

at least five years . . . immediately preceding the date of filing his application"; and (2) is "a person of good moral character."[28] Because "the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship . . . the burden is on the alien applicant to show his eligibility for citizenship in every respect."[29] "[D]oubts [about eligibility for citizenship] should be resolved in favor of the United States and against the claimant."[30]

In this appeal, we must decide whether Savane was "lawfully admitted for permanent residence" when he did not disclose his children on the DS-230. That phrase is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."[31] Though "this definition is somewhat circuitous," we have held that "a grant of permanent resident status does not meet the standard of 'lawful admission' if the applicant was not legally entitled to it for any reason."[32] So "lawful admission

---

[28] 8 U.S.C. § 1427(a).

[29] *Berenyi v. Dist. Dir., Immigr. & Naturalization Serv.*, 385 U.S. 630, 637 (1967).

[30] *Id.* (citation modified).

[31] 8 U.S.C. § 1101(a)(20).

[32] *Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 179-80 (3d Cir. 2016) (citing *Gallimore v. Att'y Gen. of United States*, 619 F.3d 216, 224 (3d Cir. 2010)).

9

'denotes compliance with substantive legal requirements, not mere procedural regularity.'"[33]

Under its general regulatory authority,[34] the Secretary of Homeland Security promulgated 8 C.F.R. § 103.2(a)(2). That regulation states: "By signing the benefit request"—here, the DS-230—"the applicant or petitioner . . . certifies under penalty of perjury that the benefit request, and all evidence submitted with it, either at the time of filing or thereafter, is true and correct." Compliance with this substantive legal requirement is a prerequisite to lawful admission as a permanent resident. *Koszelnik*, 828 F.3d at 180. Section 103.2(a)(2) prohibits making material misstatements. Thus, for purposes of his naturalization application and showing that he was a "lawfully admitted for permanent residence," Savane was required to submit truthful material information on his DS-230. *Id.* at 180, 180 n.20.

B

We turn to whether Savane violated 8 C.F.R. § 103.2(a)(2). He did.

The United States Court of Appeals for the Fourth Circuit has held that because § 103.2(a)(2) requires a petitioner to certify that all information contained in the DS-230 "is true and correct," a petitioner fails to meet the relevant legal requirements for admission when material information is omitted on his application, "regardless of whether the

---

[33] *Id.* (citation omitted).
[34]  8 U.S.C. § 1103(a)(3).

misrepresentation on [his] application was willful."[35] We cited that case, *Injeti v. U.S. Citizenship & Immigration Services*, in a footnote in our opinion in *Koszelnik*.[36] There we held that an application for lawful permanent residence failed to comply with § 103.2(a)(2) when Koszelnik's DS-230 contained "material misinformation, despite [his] certification under penalty of perjury that all the information on his application was correct."[37] We held that Koszelnik was not lawfully admitted for permanent residence when he omitted his previously assigned alien registration number and that he had been deported from the United States.[38]

Consistent with the Fourth Circuit's decision in *Injeti* and our opinion in *Koszelnik,* we now hold that the omission of information from an application is material, contrary to the provisions of 8 C.F.R. § 103.2(a)(2), when the omission prevents investigation into a relevant aspect of an applicant's eligibility, regardless of whether the omitted information would have led to the denial of the application.[39]

C

That brings us to the dispositive question in this appeal:

---

[35] *Injeti v. U.S. Citizenship & Immigr. Servs*., 737 F.3d 311, 318 (4th Cir. 2013).

[36] *Koszelnik*, 828 F.3d at 180 n.20.

[37] *Id*. at 180.

[38] *Id.*

[39] Our concurring colleague distinguishes Savane's case from *Koszelnik* and *Injeti* because the petitioners there adjusted to lawful permanent resident status under 8 U.S.C. § 1255, while Savane sought a diversity visa pursuant to § 1153. But Koszelnik also applied for a diversity visa under § 1153,

11

whether Savane's failure to disclose that he had children was material. Savane appears to argue that an omission is material only if truthful disclosure would have changed the decision of the consular officer as to his eligibility for permanent resident status. That argument is foreclosed by our precedent. We held in *Mwongera v. Immigration & Naturalization Services* that a statement (or omission) is material on an immigration form "if either (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded."[40]

---

*Koszelnik v. Sec'y of Dep't of Homeland Sec.*, No. 13-cv-6711, 2014 WL 6471479, *1 (D.N.J. Nov. 18, 2014), and included material untruthful information on that application. *Koszelnik*, 828 F.3d at 180. And Section 103.2 requires certification for any "benefit request." 8 C.F.R. § 103.2(a)(2).

[40] 187 F.3d 323, 330 (3d Cir. 1999) (citation omitted) (emphases added); *see also Kungys v. United States*, 485 U.S. 759, 772 (1988) (holding that, in relation to 8 U.S.C. § 1451(a), a concealment or misrepresentation that has "a natural tendency to influence the decisions of the Immigration and Naturalization Service" is material). *Mwongera* works hand in glove with *Kungys*. *See Saliba*, 828 F.3d at 190 n.7. Any omission that would render an applicant excludable on the true facts or shut off a line of inquiry which might well have resulted in a proper determination that the applicant be excluded would also tend to influence the decisionmaker. Further, we apply the same definition of materiality across INA processes. For example, in *United States v. Stelmokas*, we held that "[w]hile the procedures followed and questions asked when an applicant seeks a visa differ from those applicable

Savane focuses on the first prong of the *Mwongera* definition—whether he was excludable on the true facts. And he criticizes the caselaw that the District Court relied on in applying the second prong of the materiality definition because "none of [those] decisions engage[d] with the statutory text of 8 U.S.C. § 1153(c) or § 1182(a) to determine whether such an omission actually impacted statutory eligibility or inadmissibility."[41]

Savane's argument is unavailing because it misconstrues our definition of materiality. Materiality is not a "but for" test. There is no requirement that the petitioner *would have been inadmissible* had the omitted information been included. We agree with the Fourth Circuit: "finding that a misrepresentation is material does not require concluding that it *necessarily* would have changed the relevant decision."[42]

In holding that Savane's omission was material, the District Court did not rely on a specific prong of the *Mwongera* definition. It explained that had Savane disclosed his children on the DS-230, "then the discrepancy between his DS-230 and eDV would have resulted in a denial of his application for a visa, because the State Department requires consular officers to deny 'applications of registrants who list on their' DS-230

---

when an applicant seeks citizenship," the *Kungys* test for materiality applies to both circumstances. 100 F.3d 302, 317 (3d Cir. 1996).

[41] Savane Br. 13.

[42] *Injeti*, 737 F.3d at 316 (emphasis added) (relying on the natural-tendency test for materiality that the Supreme Court addressed in *Kungys*, 485 U.S. at 772).

13

'a spouse or child who was not included in their' eDV."[43] It also reasoned that because the number of diversity visas available per year is statutorily capped by 8 U.S.C. § 1151(e), and children are included in that cap if the petitioner chooses to immigrate with them, Savane's omission, at the very least, tended to shut off a relevant line of inquiry.[44]

Like the District Court,[45] we conclude that Savane's

---

[43] *Savane*, 2024 WL 4876926, at *5 (citing 9 Foreign Affairs Manual § 42.33 N6.6 (2010) (citation modified)).

[44] *Id.*

[45] Savane argues that the District Court improperly treated agency regulations and policy materials as if they were "statutory requirements." Savane Br. 13. He emphasizes that "no element of [the Diversity Visa] statute made disclosure of children relevant to a [Diversity Visa] application." Savane Br. 10. And he contends that the Court erred in relying on 22 C.F.R. § 42.33 and the Foreign Affairs Manual. The Department of State describes the Foreign Affairs Manual and its associated handbooks as "a single, comprehensive, and authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State Department." U.S. Dep't of State, FAM Volume Listing, https://fam.state.gov/ (last visited September 30, 2025). The FAM is intended to "convey codified information to Department staff . . . so they can carry out their responsibilities in accordance with statutory, executive and Department mandates." *Id.* Savane also argues that using regulations and agency guidance to determine whether his omission was material violates the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo* because these materials "impose a requirement on applicants that is simply

omission was material—but for a slightly different reason.[46] As the District Court noted, Savane's omission tended to shut off a line of inquiry that was relevant to his eligibility for lawful permanent resident status.[47] And that line of inquiry "might well have resulted in a proper determination that he be excluded."[48] One statutory ground for exclusion is whether "in the opinion of the consular officer at the time of application for a visa … [the applicant] is likely at any time to become a public charge."[49] In order to evaluate that question, the statute dictates that the consular officer consider, among other factors, the applicant's "family status" and "assets, resources, and financial

---

not a statutory requirement." Savane Br. 14. Thus, we "should reject an extra-legislative expansion of the material requirements of a [diversity visa petitioner]." *Id.* In *Loper Bright*, the Supreme Court held that courts must not defer to an agency's interpretation of an ambiguous statute. 603 U.S. 369 (2024). But we are not interpreting an ambiguous statute in this appeal. So *Loper Bright* is not applicable. We do not otherwise address Savane's argument regarding § 42.33 and the FAM because his omission was material under the statute.

[46] *See Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116 (3d Cir. 2020) ("[W]e may affirm on any ground supported by the record.").

[47] *Savane*, 2024 WL 4876926, at *5.

[48] *See Mwongera*, 187 F.3d at 330 (citation omitted). The phrase "might well have resulted in a proper determination that he be excluded" reflects the reality that it is impossible to know the actual impact of the omitted information when assessed at a later time (here, thirteen years later).

[49] 8 U.S.C. § 1182(a)(4)(A).

15

status."[50]

To state the obvious, Savane's children would have impacted consideration of the statutory factors of family and financial status—even if they did not immigrate to the United States with him. Of course, it is impossible to know thirteen years later whether the omitted information would have resulted in a proper decision that Savane was inadmissible. But it would be a perverse rule indeed if we were to make Savane the beneficiary of that indeterminacy. After all, it was his omission that deprived the consular officer of the chance to ask whether Savane's children required his financial support or were cared for by a third party. Nor could the consular officer ask whether Savane intended to remit money to his children for their support. In sum, because Savane failed to disclose that he had two children when he submitted his DS-230, he prevented the consular officer from assessing his likelihood of becoming a "public charge." And had the consular officer determined that Savane was likely to become a public charge, he would have been inadmissible per the relevant statutory factors.

Finally, our conclusion is consistent with Savane's own explanation for his failure to disclose his children on the DS-230. Savane stated that "coming to the United States would require a lot of money upon approval of the application,"[51] and the "coach" who helped him fill out the DS-230 "recommended … for financial constraints or financial reasons to go alone to the United States."[52] While Savane and his coach may have viewed omitting his children as important in obtaining permission to enter the United States, the omission

---

[50] 8 U.S.C. § 1182(a)(4)(B).

[51] App. 74.

[52] App. 82

16

was also important (and, thus, material) in that it precluded the consular officer from investigating Savane's true and complete financial status. And because that status might have rendered him statutorily inadmissible, the Government was entitled to summary judgment as to his application for naturalization.

## IV

"[T]here is a clear Congressional mandate that only applicants who demonstrate strict compliance with all of the statutory requirements for citizenship may be naturalized."[53] Savane failed in that regard. He signed the DS-230 certifying that the information he provided was true and correct even though he lied about having two children. And that lie tended to shut off a line of inquiry relevant to his eligibility—whether he was likely to become a public charge—and had the natural tendency to influence the consular officer, regardless of whether his children were immigrating to the United States. In making the misrepresentation, Savane violated 8 C.F.R. § 103.2(a)(2). He therefore was never a *lawful* permanent resident and was ineligible for naturalization. For those reasons, we will affirm the District Court's summary judgment.

---

[53] *Koszelnik*, 828 F.3d at 182.

**FREEMAN**, *Circuit Judge*, concurring.

I join the majority opinion insofar as it concludes Savane made a material misrepresentation when he applied for the diversity visa that provided him lawful permanent resident (LPR) status. However, I would not rely on 8 C.F.R. § 103.2(a)(2) to resolve this appeal. In my view, that regulation (as interpreted by the Fourth Circuit in a discussion we have endorsed) does not give full effect to the Immigration and Nationality Act (INA) provision governing inadmissibility due to misrepresentations: 8 U.S.C. § 1182(a)(6)(C)(i). Congress stated in the INA that a noncitizen is inadmissible if he makes a material *and willful* misrepresentation when applying for a benefit. By contrast, the regulation deems a noncitizen inadmissible based on a material misrepresentation, regardless of mental state.

However, because Savane forfeited any argument about whether his misrepresentation was willful, I agree that we need not address willfulness here. I concur in the judgment.

## I

8 U.S.C. § 1182 is captioned "Inadmissible aliens" and provides a list of grounds upon which noncitizens "are ineligible to receive visas and ineligible to be admitted to the United States."[1] One such ground is relevant to our decision today: a noncitizen "who, by fraud or *willfully misrepresenting a material fact*, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."[2]

"It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"[3] Thus, absent fraud, a noncitizen who obtained a benefit under the INA by misrepresenting a material fact is inadmissible under

---

[1] 8 U.S.C. § 1182(a).

[2] *Id.* § 1182(a)(6)(C)(i) (emphasis added).

[3] *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

§ 1182(a)(6)(C)(i) only if his misrepresentation was material *and willful*.

II

Both parties agree that § 1182(a)(6)(C)(i) is among the statutory provisions that govern Savane's naturalization effort. To apply § 1182(a)(6)(C)(i) to this case, we would need to assess whether Savane's misrepresentation was both material and willful.

Rather than assessing Savane's misrepresentation under § 1182(a)(6)(C)(i), the majority opinion applies a regulation. It does so because of *Koszelnik v. Secretary of Department of Homeland Security*, where we applied 8 C.F.R. § 103.2(a)(2) and held that a noncitizen was not entitled to the LPR status he procured by misrepresenting a material fact, regardless of whether that misrepresentation was willful.[4] Maj. Op. at 10–11.

Respectfully, I believe this reliance on *Koszelnik* is misplaced. In *Koszelnik*, we discounted the willfulness requirement of § 1182(a)(6)(C)(i) and applied 8 C.F.R. § 103.2(a)(2) without discussion—simply citing a Fourth Circuit opinion in a footnote.[5] And the Fourth Circuit opinion we relied on in *Koszelnik* differs from Savane's case in meaningful ways.

In *Injeti v. U.S. Citizenship and Immigration Services*, the Fourth Circuit held that 8 C.F.R. § 103.2(a)(2) is a regulatory bar on adjustments to LPR status where the applicant provided information that was not "true and correct," regardless of whether the applicant acted willfully.[6] To justify its reliance on that regulation over the INA's misrepresentation provision, the Fourth Circuit reasoned as follows:

---

[4] 828 F.3d 175, 180 & n.20 (3d Cir. 2016) (citing *Injeti v. U.S. Citizenship & Immigr. Servs.*, 737 F.3d 311, 318 (4th Cir. 2013)).

[5] *Id.*

[6] *Injeti*, 737 F.3d at 318 (citing 8 C.F.R. § 103.2(a)(2)).

2

1.  Injeti adjusted to LPR status under 8 U.S.C. § 1255;[7]

2.  Section 1255 authorizes the Attorney General to promulgate regulations governing adjustments to LPR status under this statutory pathway;[8]

3.  Pursuant to that authorization, the Attorney General promulgated 8 C.F.R. § 103.2(a)(2), which imposes a duty on noncitizens to provide truthful and correct information;[9]

4.  Section 103.2(a)(2) applies to material misrepresentations[10] and does not require willfulness;[11]

---

[7] *Id.*

[8] *Id.* ("[W]hile the statute governing adjustment of status makes admissibility a prerequisite for receiving a grant of LPR status, *see* 8 U.S.C. § 1255, the ultimate determination as to whether an alien will receive that status is left to the Attorney General 'in his discretion and *under such regulations as he may prescribe*.'" (quoting 8 U.S.C. § 1255)).

[9] *Id.* ("One such regulation, 8 C.F.R. § 103.2(a)(2), requires the applicant to certify that all information contained in the application 'is true and correct.'").

[10] *Id.* at 318 n.5 (reading § 103.2(a)(2) to imply a limitation to material facts).

[11] *Id.* at 318 (stating that § 103.2(a)(2) applies "regardless of whether [a] misrepresentation . . . was willful" (citing *In re F– – M—*, 7 I. & N. Dec. 420, 421–22 (B.I.A. 1957)). One could question whether the Fourth Circuit's interpretation of this regulation comports with the text. The regulation states: "By signing the benefit request, the applicant or petitioner . . . certifies under penalty of perjury that the benefit request, and all evidence submitted with it, either at the time of filing or thereafter, is true and correct." 8 C.F.R. § 103.2(a)(2). The plain language of the regulation requires only that an alien certify that the information in his application is "true and correct," and makes no mention of materiality or willfulness. *Id.* Acknowledging the absence of a materiality term in the text, the *Injeti* court nevertheless read the regulation to "imply"

5. Because Injeti's LPR status was invalid under the regulation, there is no need to also address the materiality of her misrepresentation under the statute, 8 U.S.C. § 1182(a)(6)(C)(i).[12]

Assuming this logical chain is valid,[13] it applies to our decision in *Koszelnik*. After all, Koszelnik, like Injeti, adjusted to LPR status under 8 U.S.C. § 1255.[14] But the logic of *Injeti* cannot apply to Savane's case. This is because *Injeti*'s reasoning is predicated entirely on § 1255—a statutory provision inapplicable to Savane's case.[15] Although *Koszelnik* and *Injeti* involved noncitizens who adjusted status under

---

a materiality limitation. *Injeti*, 737 F.3d at 318 n.5. But it is far from clear why willfulness is not also implied.

Indeed, the regulation references perjury, which, under federal law, requires a willful mental state. 18 U.S.C. § 1621 (providing that whoever (1) while under oath "willfully . . . states or subscribes any material matter which he does not believe to be true" or (2) in a declaration or statement under penalty of perjury "willfully subscribes as true any material matter which he does not believe to be true" "is guilty of perjury"). The same is true under state law and at common law. *See United States v. Dunnigan*, 507 U.S. 87, 94–95 (1993) (noting that the federal definition of perjury under oath in violation of 18 U.S.C. § 1621(1) mirrors state law definitions and has its roots in the common law). So *Injeti*'s reliance on BIA precedent to read willfulness out of the regulation warrants careful scrutiny. Yet, in *Koszelnik*, we summarily adopted *Injeti*'s statement about willfulness. *Koszelnik*, 828 F.3d at 180 n.20.

[12] *Injeti*, 737 F.3d at 318 (not addressing 8 U.S.C. § 1182(a)(6)(C)(i), because "[a]dmissibility . . . is a necessary, but not sufficient, condition for adjustment to LPR status" and the Attorney General's regulation controls the outcome).

[13] *But see supra* n.11.

[14] *See Koszelnik v. Sec'y of Dep't of Homeland Sec.*, No. 13-CV-6711, 2014 WL 6471479, at *1 (D.N.J. Nov. 18, 2014) (noting that Koszelnik applied for a diversity visa and adjustment of status), *aff'd*, 828 F.3d 175 (3d Cir. 2016).

[15] *Injeti*, 737 F.3d at 318 (relying on § 1255's language to justify its application of 8 C.F.R. § 103.2(a)(2) instead of 8 U.S.C. § 1182(a)(6)(C)(i).

4

§ 1255 and obtained diversity visas under § 1153(c), *Injeti* (and by extension *Koszelnik*) relies only on § 1255 to support the broad grant of authority to the Attorney General.  Savane did not adjust to LPR status under § 1255; he only obtained LPR status under U.S.C. § 1153(c).  And although § 1153 authorizes the Secretary of State to prescribe the form and content of diversity visa applications, it does not give the Secretary discretion to grant diversity visas under any regulations she may promulgate.[16]

Because § 1153 lacks § 1255's broad delegation of discretion to the Executive over grants of LPR status, I am not persuaded that the Executive can promulgate a regulation that voids a term of a duly enacted statute.  Thus, I would apply § 1182(a)(6)(C)(i)—including the materiality and willfulness requirements—to assess admissibility.

Although I would consider willfulness and materiality in future cases implicating inadmissibility under § 1182(a)(6)(C)(i), I agree that we do not need to do so here because Savane's appellate brief does not develop an argument about willfulness.[17]  Therefore, I respectfully concur in the judgment.

---

[16] 8 U.S.C. § 1153(f) refers to consular officers' authorization to grant diversity visas under 8 U.S.C. § 1154.  In turn, § 1154 says the Secretary of State determines the form and content of a diversity visa application.  8 U.S.C. § 1154(a)(1)(I)(iii).  But unlike § 1255, §§ 1153 and 1154 do not delegate discretion to the Executive to determine who may obtain LPR status under this pathway.  *See* 8 U.S.C. § 1255(a) (providing that "[t]he status of an alien . . . *may* be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence" if the applicant is admissible and satisfies other criteria (emphasis added)).

[17] *See In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016) (explaining that litigants forfeit arguments that they fail to develop in an opening brief).

5